JAS. CURETON, ET AL. v. P. T. PORTER, ET AL.

[Abstract Kentucky Law Reporter, Vol. 7—96.]

**Construction of Will.**

A testator by will provided "I bequeath to my wife, * * * all my lands, money and stock, in fact everything I possess; she acting as administrator and guardian for my children, she having full and entire control of all my lands, stock and money without any security whatever being exacted of her. If said wife should at any time marry, then I wish the said Harriet B. Cureton (wife) to retain one-third of my estate, the remainder to be equally divided among my four children (naming them)." His widow remarried within a year and upon her death left surviving her in addition to said four children, a husband and two children by him. **Held:** That the will means that in the event of the widow's remarriage she was to retain one-third of the estate as her own and not that she should have the same kind of an estate in one-third of it that she had in the entire estate during widowhood.

30

APPEAL FROM HENRY CIRCUIT COURT.

May 14, 1885.

Opinion by Judge Holt:

The will of James Cureton read thus:

"Henry county, Ky., March 21, 1873.

"I, James Cureton, being of sound mind, make this my last will and testament. I bequeath to my wife, Harriet B. Cureton, all my lands, money and stock, in fact everything I possess; she acting as administrator and guardian for my children. She having full and entire control of all my lands, stock and money without any security whatever being exacted of her. If said Harriet B. Cureton should at any time marry then I wish the said Harriet B. Cureton to retain one third of my estate, the remainder to be equally divided among my four children, James, John, Edward Nathaniel and Abner Cureton.

James Cureton."

The testator died in 1873, leaving his wife and the children above named surviving him. The widow married again in 1874 and died in 1880, leaving her husband and her two children by the last marriage surviving her; and this is a contest between them on one side, and the children by the first marriage upon the other. The former claim that Mrs. Cureton, upon her second marriage, was entitled, under the will, to one-third of her first husband's estate in fee, and absolutely, while the latter say she had but a life estate in such third portion.

It is urged upon the one hand that the first clause of it only gave her the control of the estate during widowhood for the benefit of herself and the four children, and that in the event of her marriage the second clause remitted her to a life estate in one third of it.

Upon the other hand it is said that the first clause vested the fee to the entire estate in her; that the testator believed that she would do what was right by their children, and owing to this confidence reposed in her by his will, as to her own disposition of his estate, but that whether this be so or not, yet that upon the second marriage the second clause gave her an absolute estate in one third of the estate.

The language of the first clause can not be said to create a prec-atory trust. To do so it must be clearly expressed, and while words of trust or hope, or those so purporting, are treated as imperative when such construction is necessary to effectuate the testator's in-tention, yet the modern inclination of the courts is to restrict rather than liberalize such language in order to guard against the danger of making a will for the testator. His intention, however, is to be sought, and when this is ascertained it must be followed. If technical rules and the manifest intention are opposed, common sense, which is the best guide in the matter, says that the latter must govern. Formerly, and by the common law, a devise of land without words of inheritance created but a life estate; but now a devise absolute in its terms passes the fee, unless the devisor has shown a contrary intention in some portion of the will.

In this instance the will can not be read in the light of surround-ing circumstances, as they are not shown, save that the testator had a considerable estate, but it provides that his wife is to act as "guard-ian for my children;" that she is to have the "control" of the estate, and "without any security whatever being exacted from her."

These expressions lead irresistibly to the conclusion that it was the expectation and intention of the testator that his wife and children should enjoy the estate in common; and although the immediate words of the devise to the wife are absolute in charac-ter, yet when the entire clause is considered and the intention of the testator regarded, it is clear that a beneficial estate was created in her, not only for herself but for the children.

The ownership and control was conferred upon her, but not the exclusive benefit nor the uncontrollable beneficial ownership.

We are now, however, met with the suggestion that if this be so, that then the second clause only gave to the wife, in the event of her again marrying, the same estate in one third of the property that she had in the whole of it during widowhood; and that having only the use of it, that at her death it passed to the testator's chil-dren, and that the last husband and her children by him have no interest in it.

It is urged that this view is sustained by the use of the word "retain," and that it is unreasonable to suppose that the testator would have given her more in the event of her marriage than the

law would have allowed her, thus seemingly offering her a premium to marry.

In this, however, we can not concur, and suggest that the force of the last suggestion is met by the fact, that if she upon her second marriage had but a life estate in one third of the property, then we must suppose that the testator intended to restrict or punish her for marrying again because his personal estate was considerable, and the law gave her a greater interest in it than the will if such interpretation be correct. It is not unreasonable to suppose that the testator believed that it was right and fair that one who had shared his joys and sorrows, and who may have contributed equally to the creation of the estate, should have one third of it.

It is evident that in making the will the first object of his bounty in his view was his wife. This is shown by the first clause of it; and when he provided that in the event of her again marrying, she should "retain" one third of his estate, he meant by this expression that she should keep as her own that much of it, and not that she should have the same kind of an estate in one third of it, that she had in the entire estate during widowhood.

We have reached this conclusion, however, mainly on account of another reason, that is, keeping in mind that the intention of the testator is to control, is quite conclusive of the question. It is perfectly evident that he intended to dispose of his entire estate by the will. The first clause provides as to "all" of his estate; while the second, after providing that in the event of his wife's remarriage, that she is to retain the one third of his estate, says: "the remainder to be equally divided among my four children, James, John, Edward Nathaniel and Abner Cureton."

If he did not intend that his wife on a second marriage should have absolutely the one third of the estate, then it follows that there is no final disposition by the will of this portion. It is not reasonable to suppose that he intended such a result, when immediately following the devise of the one third to her, he disposes absolutely of the remainder of his estate.

Judgment *affirmed*.

*Carrol & Barbour*, for appellant.

*Geo. C. Drane, John D. Carroll*, for appellee.

[Cited, *Frank v. Unz.* 91 Ky. 624, 13 Ky. L. 226, 16 S. W. 712.]